

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KENYATTA MARLEY TURNER,        )
                               )
            Petitioner,        )
                               )
V.                             )        Criminal No. 1:07CR152
                               )        Civil Action No. 1:08cv1273
UNITED STATES OF AMERICA,      )
                               )
            Respondent.        )
                               )

## MEMORANDUM OPINION

This case is before the Court on Petitioner Kenyatta Marley Turner's Motion pursuant to 28 U.S.C. § 2255.

On July 11, 2007, Turner pleaded guilty to one count of conspiracy to distribute fifty grams or more of cocaine base and a detectable amount of MDMA in violation of 21 U.S.C. §§ 841 and 846, and to a second count of possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). Turner pleaded guilty under a plea agreement. This agreement required the government to file a motion to withdraw the information to establish prior conviction that the government had filed under 21 U.S.C. § 851. The government filed the promised motion, and the Court granted it. On December 7, 2007, the Court sentenced Turner to a total of 211 months' imprisonment, followed by a five-year period of supervised release.

On December 8, 2008, Turner filed his pro se petition under § 2255. Turner's petition alleges that his attorney conspired with the prosecution to get Turner to plead guilty falsely. Turner alleges that his counsel, Christopher Amolsch, Esq., prosecuted a campaign of harassment aimed at coercing Turner to plead guilty. First, Turner claims Amolsch told Turner's mother that Turner, who is black, could not win his case in front of a white jury and a white judge. Second, Turner claims Amolsch told Turner's mother that she was under investigation and would be arrested if Turner did not plead guilty. Turner claims Amolsch directed similar efforts at Turner's sister, telling her that there was a warrant for her arrest and that she was required to surrender herself to the police. Third, according to Turner, Amolsch cited examples of defendants who had gone to trial, lost, and been sentenced to life in prison.

Turner also argues that his guilty plea was the product of misinformation because he had an inaccurate picture of the sentencing guidelines the Court would apply.

The transcript of Turner's plea hearing conducted on July 11, 2007, rebuts his allegations. Turner suggests that there was a threat to arrest his mother if he did not plead guilty. Yet, at his plea hearing, he testified that the plea agreement contained the entire understanding between himself and the government and that no one had made any promises or threats to induce him to plead guilty.

-2-

Turner's testimony at the plea hearing belies his current allegation that his guilty plea was the result of misinformation about the applicable sentencing guidelines. He testified that he understood that the Court could sentence him anywhere within the statutory maximum penalties for the offenses to which he was pleading guilty. Finally, Turner testified that he makes no claim that he is actually innocent of the charges to which he pleaded guilty.

"Under 28 U.S.C. § 2255, a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." <u>Cameron v. United States</u>, 2008 WL 1984254, *1 (E.D.Va. 2008) (citing 28 U.S.C. § 2255; <u>Hill v.United States</u>, 368 U.S. 424, 426-27 (1962)). The prisoner bears the burden of proof by a preponderance of the evidence. <u>Id.</u> at *1 (citing <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir. 1958)). Claims of ineffective assistance of counsel are evaluated against a rigorous two-pronged test established by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). The first prong looks to counsel's professional competence. To prevail on this prong, the prisoner must demonstrate that, in light of all the circumstances as they

-3-

appeared at the time of the conduct, "counsel's representations fell below an objective standard of reasonableness," i.e., "prevailing professional norms." Id.

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance, and "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689-90; see also United States v. Terry, 366 F.3d 312, 316-18 (4th Cir.), cert. denied, 543 U.S. 983 (2004); Matthews v. Evatt, 105 F.3d 907, 919 (4th Cir.), cert. denied, 522 U.S. 833 (1997). For the prisoner to overcome this presumption, "the analysis of counsel's performance typically must be comprehensive; i.e., not narrowly limited to a review of counsel's failings." See Strickland, 466 U.S. at 689. The Supreme Court has cautioned that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. The Court noted in particular that the reasonableness of a lawyer's actions often depend on "informed strategic choices made by the defendant and on information supplied by the defendant." Id. at 691. Thus, to prevail on the performance prong, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 690.

To satisfy the second prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

-4-

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See Strickland, 466 U.S. at 694. In other words, the prisoner must affirmatively prove prejudice that is so serious as to have deprived him of a fair trial, a trial whose result is unreliable. See Strickland, 466 U.S. at 687, 693.

The Fourth Circuit has labeled the two prongs of the Strickland test the "performance prong" and the "prejudice prong." See Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700. For that reason, if the prisoner fails to show prejudice, the court need not consider counsel's performance. Strickland, 466 U.S. at 697; Terry, 366 F.3d at 314; Fields, 956 F.2d at 1297; Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

The Strickland test applies also in the context of guilty pleas. Hill v. Lockhart, 474 U.S. 52, 58 (1984). To satisfy the prejudice prong in such a case, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. The defendant's showing must be evaluated objectively, "without regard for the idiosyncrasies of the particular decision maker." Id. (internal quotation marks omitted).

In this case, the Court need not look to the performance of Turner's counsel because Turner cannot satisfy the prejudice prong of the <u>Strickland</u> test. Turner has failed to show that, but for the supposed errors of Turner's counsel, Turner would have pleaded not guilty and insisted on going to trial. Ordinarily, such a showing requires the presence of some potentially meritorious position the defendant could have taken at trial:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. <u>See</u>, <u>e.g.</u>, <u>Evans v. Meyer</u>, 742 F.2d 371, 375 (7th Cir. 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As we explained in <u>Strickland v. Washington</u> . . . , these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decision maker."

<u>Hill</u>, 474 U.S. at 59-60.

Turner has presented no even arguably meritorious position he could have taken at trial. In the absence of any arguably meritorious defense, the record shows that it would have been objectively unreasonable for Turner to plead not guilty and go to trial. Had Turner been convicted at trial, he would have faced a mandatory minimum sentence of twenty years for the drug offense, 21 U.S.C. § 841(b)(1)(A) ("If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years . . . ."), followed by an additional five years for possessing a firearm in furtherance of the drug offense, 18 U.S.C. § 924(c)(1)(A)(I) ("[A]ny person . . . who, in furtherance of any [federal drug trafficking crime], possesses a firearm, shall, in addition to the punishment provided for such crime . . . be sentenced to a term of imprisonment of not less than 5 years . . . ."). By entering the plea agreement, Turner significantly reduced his exposure to a mandatory minimum sentence. As it turns out, Turner was sentenced to 211 months, eighty-nine months less than the mandatory minimum sentence he would have faced had he not pleaded guilty. Judged objectively, there is simply no reasonable likelihood that Turner would have pleaded not guilty and insisted on going to trial absent Amolsch's supposed errors. For that reason, Turner cannot satisfy the prejudice prong of the Strickland test, and his Motion under 28 U.S.C. § 2255 must be

denied.

An appropriate order shall issue.

/s/

Claude M. Hilton
United States District Judge

Alexandria, Virginia
~~February~~ March 4, 2009

-8-